UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAE USA, INC.,

    Plaintiff,

v.                                                    Case No.  8:11-cv-64-T-24 TBM

XL INSURANCE COMPANY
LIMITED,

    Defendant.
_____/

## ORDER

This cause comes before the Court on Defendant's Motion to Dismiss Complaint Based on International Comity and Forum Non Conveniens, or Alternatively, Motion to Stay.  (Doc. No. 3).  Plaintiff opposes this motion (Doc. No. 14), and Defendant has filed a reply thereto (Doc. No. 19).  Additionally, Defendant filed a Motion for Determination of Foreign Law.[1] (Doc. No. 13).  Plaintiff opposes the motion (Doc. No. 15), to which Defendant has filed a reply (Doc. No. 20).  Thereafter, the Court ordered supplemental briefing (Doc. No. 24), and the parties filed supplemental briefs (Doc. No. 27, 29).

**I.  Background**

Plaintiff CAE USA, Inc. is a Florida corporation that obtained insurance from Defendant XL Insurance Company Limited, a foreign insurance company incorporated in England.  (Doc. No. 2, ¶ 1; Doc. No. 5, ¶ 2).  Defendant is authorized as an insurance company in Canada and

---

[1]This motion raises arguments that relate to Defendant's Motion to Dismiss Complaint Based on International Comity and Forum Non Conveniens, or Alternatively, Motion to Stay. As such, the Court will consider the motions together and will not separately analyze Defendant's Motion for Determination of Foreign Law.

delivered the insurance policy at issue to Plaintiff's parent corporation, CAE, Inc., in Canada. (Doc. No. 6, ¶ 2, 4). According to Plaintiff, the insurance policy provides excess employer's liability coverage for bodily injuries to its employees. (Doc. No. 2, ¶ 7, 10).

While the policy was in force, one of Plaintiff's employees, Aramis Diaz, was injured on the job. (Doc. No. 2, ¶ 11). Diaz allegedly fell backward into an empty elevator shaft on the second floor of a job site and was injured. (Doc. No. 2-4, ¶ 11). Thereafter, Diaz filed suit against Plaintiff, alleging a claim of "virtually certain tort." (Doc. No. 2-4). This type of claim is an exception to the exclusiveness of liability offered by workers' compensation law. As such, an employer can be held liable if it "engaged in conduct that the employer knew, based on prior similar accidents . . . , was virtually certain to result in injury or death to the employee, and the employee was not aware of the risk because the danger was not apparent and the employer deliberately concealed or misrepresented the danger so as to prevent the employee from exercising informed judgment about whether to perform the work." Fla. Stat. § 440.11(1)(b)(2).

Plaintiff notified Defendant of Diaz's claim. On July 29, 2010, Defendant responded by completely denying coverage, because Canadian law provides that an insurer is never liable to compensate for injury resulting from the insured's intentional fault. (Doc. No. 2, ¶ 13; Doc. No. 2-5, Ex. D). Thereafter, on October 22, 2010, Defendant filed a Motion to Institute Proceedings in Declaratory Judgment in Canada. (Doc. No. 6, ¶ 2). Defendant amended the motion and served the amended motion on Plaintiff on November 30, 2010. (Doc. No. 6, ¶ 2). However, prior to receiving the motion, on November 8, 2010, Plaintiff filed the instant lawsuit, in which it requests a declaratory judgment that the insurance policy provides coverage for Diaz's claim and asserts a breach of contract claim. (Doc. No. 2).

2

**II. Motion to Dismiss or Stay**

In response to the complaint in the instant case, Defendant filed the instant motion to dismiss based on international abstention and forum non conveniens, or alternatively, to stay this case. Specifically, Defendant asks that this Court dismiss this case so that the parties' dispute can be litigated in Canada, or stay this case while Defendant's previously filed lawsuit against Plaintiff in Canada proceeds. As explained below, the motion is denied.

**A. Choice of Law**

At the outset, the Court notes that a choice of law issue exists in this case. The Court had the parties submit supplemental briefing on the issue. Plaintiff contends that the interpretation of the underlying insurance policy will require the application of Florida law, while Defendant argues that Canadian law applies.

Since this case is in this Court based on diversity subject matter jurisdiction, this Court must apply Florida's choice of law rules governing the interpretation of insurance contracts to determine whether Florida or Canada's law applies in this case. See Shapiro v. Associated International Insurance Co., 899 F.2d 1116, 1118 (11th Cir. 1990). Florida applies the rule of *lex loci contractus* when determining choice of law in contract cases. Under that rule, Canadian law applies (since the insurance policy was delivered in Canada), unless Plaintiff shows that the public policy exception is implicated.

In State Farm Mutual Automobile Insurance Co. v. Roach, 945 So. 2d 1160 (Fla. 2006), the Florida Supreme Court explained the public policy exception:

> Florida courts have carved out a narrow exception to the lex loci rule. We long ago held that the rules of comity may not be departed from, *unless* in certain cases for the purpose of necessary protection of our own citizens, or of enforcing some paramount rule of public policy. This has become known as the public policy

3

>   exception. It requires *both* a Florida citizen in need of protection *and* a paramount Florida public policy. In the context of insurance contracts, at least, one more requirement also must be met: the insurer must be on reasonable notice that the insured is a Florida citizen. . . . Accordingly, in applying the exception, courts consider whether the insured notified the insurer . . . [that] the insured risk is or will be primarily located in Florida.

Id. at 1165 (internal citations omitted).

There is no dispute that Plaintiff is a Florida citizen and that Defendant was aware of that. The issue is whether the application of Canadian law will result in an inequitable insurance contract that is contrary to some specific public policy of Florida. Plaintiff contends that the application of Canadian law is contrary to Florida public policy because: (1) Canadian law (Article 2464 of the Civil Code of Quebec) mandates that an insurer is never liable to compensate for an injury resulting from an insured's intentional fault;[2] but (2) Florida does not relieve an insurer of its coverage obligations simply because an injury results from the insured's intentional act. Plaintiff's argument, however, is flawed.

Plaintiff argues that Florida law draws a distinction between injuries sustained by an intentional act (which may be insurable when the resulting injury was not intended) and injuries that are specifically intended (which are not insurable). However, Plaintiff has not shown that the Canadian law's automatic exclusion from coverage for injuries resulting from an insured's "intentional fault" is inconsistent with Florida's law or Florida's public policy. Plaintiff did not provide this Court with any Canadian case law that interprets Article 2464 and shows whether

---

[2]Defendant argues that Article 2464 of the Civil Code of Quebec mandates that an insurer is never liable to compensate for an injury resulting from an insured's intentional fault, and for the purposes of determining choice of law only, Plaintiff and the Court assume that this construction of Canadian law is correct.

4

that law automatically excludes insurance coverage for both intentional injuries and intentional acts.  Furthermore, "Florida courts have long held that the public policy of [Florida] prohibits an insured from being indemnified from a loss resulting from its own true intentional acts."  Griffin Brothers Co. v. Mohammed, 918 So. 2d 425, 430 (Fla. 4th DCA 2006)(citations omitted).

Additionally, the Florida Supreme Court has noted that insurers remain free to broaden the scope of intentional injury exclusions within their policies.  See Travelers Indemnity Co. v. PCR Inc., 889 So. 2d 779, 796 n.18 (Fla. 2004).  Such acknowledgment by the Florida Supreme Court undermines Plaintiff's argument that Florida's public policy would protect against excluding coverage for intentional fault.

Accordingly, the Court finds that Plaintiff has not shown that the application of Canadian law will result in an inequitable insurance contract that is contrary to some specific public policy of Florida.  As such, the Court finds that the public policy exception to the rule of *lex loci contractus* is not implicated, and as a result, Canadian law will apply to the interpretation of the insurance policy at issue in this case.[3]

### B.  International Abstention

Defendant argues that this case should be dismissed due to international abstention in favor of the pending proceedings in Canada.  Plaintiff points out that "[a]bstention is the exception instead of the rule and 'courts regularly permit parallel proceedings in an American court and a foreign court.'  Abstention, therefore, is not to be undertaken lightly."  Ortega

---

[3]The Court does not have access to a Canadian legal database, nor is this Court fluent in French (as Canadian cases are often written in French).  As such, in the future, the parties are obligated to supply the Court with all of the relevant Canadian case law (translated to English) that is necessary for the Court to decide the issues that arise in this case.

Trujillo v. Conover & Co. Communications, Inc., 221 F.3d 1262, 1265 (11th Cir. 2000)(quoting Turner Entertainment Co. v. Degeto Film, 25 F.3d 1512, 1518, 1521 (11th Cir. 1994)).

In Turner, the Eleventh Circuit explained the proper analysis when faced with the issue of international abstention:

> Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred upon them. Nevertheless, in some private international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction. Therefore, federal courts have begun to fashion principles that guide courts' actions in cases of concurrent jurisdiction in a federal court and the court of a foreign nation.
>
> \*   \*   \*
>
> [C]ourts have sought to fashion principles that will promote three readily identifiable goals in the area of concurrent international jurisdiction: (1) a proper level of respect for the acts of our fellow sovereign nations–a rather vague concept referred to in American jurisprudence as international comity; (2) fairness to litigants; and (3) efficient use of scarce judicial resources.

Turner, 25 F.3d at 1518 (internal citations omitted). Accordingly, this Court will analyze each of these factors as they relate to this case.

### 1. International Comity

The first factor the Court considers when determining whether to decline to exercise jurisdiction on international abstention grounds is international comity. The Turner court stated the following regarding international comity:

> In the context of international abstention case law, the meaning of international comity is derived from the . . . Supreme Court case [Hilton v. Guyot, 159 U.S. 113 (1895),] on the recognition of judgments rendered in a foreign nation. General comity concerns include: (1) whether the judgment was rendered via fraud; (2) whether the judgment was rendered by a competent court utilizing proceedings consistent with civilized jurisprudence; and (3) whether the foreign judgment is prejudicial, in the sense of violating American public policy because it is repugnant to fundamental principles of what is decent and just.

Turner, 25 F.3d at 1519 (internal citations omitted).  Plaintiff has not alleged that there has been any fraud in connection with the Canadian proceedings, nor has it argued that the Canadian court is not a competent court utilizing proceedings consistent with civilized jurisprudence.  Likewise, Plaintiff does not contend that a judgment from the Canadian court would violate American public policy.

However, Plaintiff argues that international comity is not a basis for abstention in this case, because there has not yet been a judgment issued in the Canadian case for this Court to respect and defer to.  The Turner court noted, without explicitly taking a position, that some courts consider the principles of international abstention in light of "a general rule that federal courts should assume jurisdiction in parallel proceedings until a judgment is reached in one court."[4]  Id. at 1518 n.9 (citations omitted).  Given the early stage of the Canadian proceedings and the fact that no judgment has been issued in that case, this Court is persuaded by Plaintiff's argument that the need for international abstention is less apparent.  See In re CP Ships Ltd., Securities Litigation, 2008 WL 4663363, at *3 (M.D. Fla. Oct. 21, 2008)(declining to abstain from exercising jurisdiction on international comity grounds due, in part, to the fact that the parallel Canadian proceedings had not yet rendered a judgment on the merits).

Furthermore, this Court should also consider the relative strengths of U.S. and Canadian interests.  See Turner, 25 F.3d at 1521.  The Court concludes that Canada's ties to this dispute

---

[4]The Turner court did not have to specifically address whether a federal court should assume jurisdiction in parallel proceedings if a judgment has not been reached in the foreign proceedings, because the foreign proceedings in the Turner case had already resulted in a decision on the merits.  See Turner, 25 F.3d at 1518.

are not more significant than the United States' ties. While the Court acknowledges that Defendant is authorized to do business in Canada and issued the policy in Canada, the Court recognizes that this dispute involves a United States plaintiff and an insured risk located in the United States. Furthermore, the Court notes that Defendant argues that Canada is the better forum for the parties' dispute because Canadian law will be applied in this case, but this Court assures the parties that it is capable of applying Canadian law to this case. Therefore, based on the above, this Court finds that the international comity factor does not really weigh in favor of abstention.

### 2. Fairness to the Litigants

The second factor the Court considers when determining whether to decline to exercise jurisdiction on international abstention grounds is fairness to the litigants. "With respect to the goal of fairness, relevant considerations include: (1) the order in which the suits were filed; (2) the more convenient forum; and (3) the possibility of prejudice to parties resulting from abstention." Id. at 1521-22 (internal citations omitted).

With regards to the order in which the lawsuits were filed, the Canadian case was filed first. However, it was only filed seventeen days before the instant case. Whether this Court should abstain cannot be based solely on the fact that the Canadian case was filed such a short time earlier. See id. at 1522 (citations omitted); Hayes Lemmerz International-Georgia, Inc. v. Punch Property International NV, 2010 WL 375155, at *6 (N.D. Ga. Jan. 25, 2010)(citation omitted). As such, this consideration weighs only slightly in favor of abstention.

With regards to the more convenient forum, the Court finds that this forum is more convenient for Plaintiff, since Plaintiff is a Florida corporation. The Canadian forum is less

convenient overall than this Court, as Defendant is not located in Canada–it is only authorized to do business there. Therefore, this consideration does not weigh in favor of abstention.

The Court must also consider the possibility of prejudice to the parties that may result from abstention, and the Court should not abstain from exercising jurisdiction if abstention would limit "the ability of the parties to fully and fairly litigate their claims." Turner, 25 F.3d at 1522 (citation omitted). While Plaintiff has not shown that it would be prejudiced by litigating this dispute in Canada, such a consideration does not overcome the fact that this Court is a more convenient forum overall. Accordingly, the Court finds that the fairness to the litigants factor does not weigh in favor of abstention.

### 3. Efficient Use of Scarce Judicial Resources

The third factor the Court considers when determining whether to decline to exercise jurisdiction on international abstention grounds is the efficient use of scarce judicial resources. "Criteria relevant to efficiency include (1) the inconvenience of the federal forum; (2) the desirability of avoiding piecemeal litigation; (3) whether the actions have parties and issues in common; and (4) whether the alternative forum is likely to render a prompt disposition." Id. (internal citations omitted). As explained below, the efficiency factor does not weigh for or against abstention.

The federal forum is equally inconvenient for Defendant as the Canadian forum is inconvenient for Plaintiff. Furthermore, the instant lawsuit is not a part of a larger dispute between the parties, and as such, allowing this case to proceed will not result in piecemeal litigation. Finally, this Court is not aware of how quickly the Canadian court will render a prompt decision. Therefore, these considerations do not weigh for or against abstention.

### 4. Conclusion Regarding International Abstention

This Court is mindful that "[a]bstention is the exception instead of the rule." Ortega Trujillo, 221 F.3d at 1265. After considering the factors of international comity, fairness to the litigants, and efficient use of scarce judicial resources, the Court finds that international abstention is not warranted, because: (1) the Canadian proceeding was filed only days before the instant case; (2) a judgment has not yet been rendered in the Canadian proceeding; (3) the United States has stronger ties to this case than Canada, since Plaintiff is a United States citizen and Defendant is not a citizen of Canada; and (4) this Court is the more convenient forum. Accordingly, Defendant's motion to dismiss this case on international abstention grounds is denied.

### C. Forum Non Conveniens

Next, Defendant argues that this case should be dismissed due to forum non conveniens. The Eleventh Circuit has explained the framework to be used when analyzing such a motion:

> Under the doctrine of *forum non conveniens,* a district court has inherent power to decline to exercise jurisdiction over a case when an adequate, alternative forum is available. The court must weigh relative advantages and obstacles to fair trial in each forum, considering factors of private and public interest. The analytic method the district court should employ has been well-summarized as follows:
>
> As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case. Next, the trial judge must consider all relevant factors of *private* interest, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice. If the trial judge finds this balance of private interests to be in equipoise or near equipoise, he must then determine whether or not factors of *public* interest tip the balance in favor of a trial in a foreign forum. If he decides that the balance favors such a foreign forum, the trial judge must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice.
>
> \* \* \*
>
> Since the touchstone of *forum non conveniens* analysis is convenience, controlling weight cannot be given to any one factor in the balancing process or

> the doctrine would lose much of the flexibility that is its essence. The Supreme Court has indicated that, in considering the private interests of the litigants, some important considerations are: relative ease of access to sources of proof; ability to obtain witnesses; possibility of view of premises, if relevant; and all other practical problems that make trial of a case easy, expeditious and inexpensive. The Court also listed certain public interest factors bearing upon the forum's interest in entertaining the lawsuit: court congestion and jury duty generated by controversies having no relation to the forum; the desirability of having localized controversies decided at home; and the difficulties attendant resolving conflict-of-laws problems and applying foreign law. It is evident that these lists were not intended to be exhaustive, but merely to suggest the range of relevant considerations.

C.A. La Seguridad v. Transytur Line, 707 F.2d 1304, 1307 (11th Cir. 1983)(internal citations and quotation marks omitted). Accordingly, the Court will analyze each of the factors set forth above.

### 1. Availability of an Adequate Alternative Forum

The first factor that this Court must consider is whether Defendant has shown that Canada is an available and adequate alternative forum. See Leon v. Millon Air, Inc., 251 F.3d 1305, 1311 (11th Cir. 2001). "An alternative forum is 'available' to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred." Id. (citation omitted). Thus, as long as the defendant is subject to process in the alternative forum, the forum is considered available, because "the forum non conveniens test generally assumes that the plaintiff who brought suit in the challenged venue will be the plaintiff in the proposed alternative forum." Rolls-Royce Commercial Marine, Inc. v. New Hampshire Ins. Co., 2010 WL 5067608, at * 3 (S.D. Fla. Dec.7, 2010)(citation omitted). Since Defendant already has a pending case against Plaintiff in Canada, Plaintiff can simply file counterclaims in that case, and as such, it appears

that Canada can assert jurisdiction over Defendant.[5]  See id.

Next, the Court must consider the adequacy of the Canadian forum.  An alternative forum is not adequate if "'the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all.'"  Leon, 251 F.3d at 1311 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 (1981)).  However, perfection is not required.  See id. (citation omitted).  Plaintiff has not argued that the Canadian forum is inadequate, and Defendant has submitted cases from the Canadian courts showing that such courts handle requests for declaratory relief in insurance coverage disputes.  Accordingly, this Court finds that the Canadian forum is an available and adequate alternative forum.

### 2.  Private Interest Factors

Next, this Court must consider the private interest factors.  In doing so, "the plaintiffs' choice of forum should rarely be disturbed 'unless the balance is strongly in favor of the defendant.'"  SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1101 (11th Cir. 2004)(quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).  The Eleventh Circuit has stated that before dismissing a case that has a U.S. plaintiff based on *forum non conveniens*, a court should "require positive evidence of unusually extreme circumstances,

---

[5]Plaintiff argues that Canada is not an available forum because Canada does not have jurisdiction over the case filed by Defendant. In support of this argument, Plaintiff cites to Section 3150 of the Quebec Civil Code, which states that the Canadian court "has jurisdiction to hear an action based on a contract of insurance where the holder [or] the insured . . . of the contract is domiciled or a resident in Quebec." Defendant contends that since Plaintiff's parent company is the policyholder (Plaintiff is a named additional insured) and a resident of Quebec, the Canadian court had jurisdiction over the case. Plaintiff has not provided the Court with any case law showing Defendant's interpretation of § 3150 to be incorrect. Therefore, for the purpose of this motion, the Court will assume that the Canadian court has jurisdiction over Defendant's case (and as such, Plaintiff could file a counterclaim in that case).

and should be thoroughly convinced that material injustice is manifest before . . . deny[ing] a United States citizen access to the courts of this country." Id. at 1101-02 (quotation marks and citations omitted); see also Wilson v. Island Seas Investments, Ltd., 590 F.3d 1264, 1270 (11th Cir. 2009). Since Plaintiff is a U.S. citizen, this factor already weighs strongly in Plaintiff's favor and against dismissal.

Additionally, the Court must consider the other private interest factors, such as "the relative ease of access to sources of proof, access to unwilling and willing witnesses, ability to compel testimony, the possibility of view of premises, and the enforceability of a judgment." Wilson, 590 F.3d at 1270 (citations omitted). The Court notes that these factors are not exhaustive and that the Court should be flexible in applying them. See id. (citation omitted).

Defendant does not argue that litigating in Florida will be problematic regarding obtaining access to evidence or witnesses. (Doc. No. 3, p. 7). The only private interest factor that Defendant focuses on is the cost of translating Canadian cases to English for this Court. However, the inconvenience of translating cases for the Court is minor compared to the inconvenience of forcing a United States plaintiff to prosecute its claims in another country.[6] Accordingly, the Court finds that the private interest factor weighs strongly in Plaintiff's favor and against dismissal.

### 3. Public Interest Factors

Since the Court has found that the private interest factor weighs heavily in Plaintiff's

---

[6]Defendant argues that it would not be inconvenient for Plaintiff to litigate in Canada, because Plaintiff's parent company is located in Canada. However, Defendant does not cite any case law to support the proposition that the Court can look at a related entity's residence when determining the convenience of the litigating parties.

favor, the Court is not required to analyze the public interest factor. However, the Court will consider the public interest factor, and in doing so, the Court considers: "court congestion and jury duty generated by controversies having no relation to the forum; the desirability of having localized controversies decided at home; and the difficulties attendant resolving conflict-of-laws problems and applying foreign law." La Seguridad, 707 F.2d at 1307 (citation omitted). The Court notes that these factors are not exhaustive. See id. (citation omitted).

Defendant correctly argues that one of the factors for the Court to consider is the choice of forum's law to be applied to the merits of the case. This Court has concluded that Canadian law will be applied when determining the merits of this case. "[W]hile the application of foreign law is an important factor to be considered in weighing the public interests, this factor cannot be accorded dispositive weight." SME Racks, 382 F.3d at 1104-05.

Also relevant to the analysis of the public interest factor is the sovereigns' interests in deciding the dispute. See id. at 1104 (citation omitted). The United States has a strong interest in ensuring that Plaintiff, a U.S. citizen, is able to pursue its claims in the United States. See id. (citation omitted). Presumably, Canada has an interest in how Canadian contracts and Canadian laws are interpreted. However, Canada's interests do not outweigh the United States' interest.

Defendant also argues that dismissal of this case would relieve this Court's docket congestion. The Court acknowledges that this case may ultimately end up wasting judicial resources if the Canadian court renders a judgment first, which this Court will have to respect on international comity grounds. However, since this case and the Canadian case were filed very close in time, and this Court does not know how quickly the Canadian case will proceed, it is not certain that litigating this case will result in a waste of judicial resources.

### 4.  Weighing All of the Factors

After considering the private and public interest factors, the Court finds that, overall, the factors weigh in Plaintiff's favor.   The Court reaches this conclusion because: (1) Plaintiff is a United States citizen; and (2) there is an absence of evidence of unusually extreme circumstances, such that the Court is not thoroughly convinced that material injustice is manifest.  Accordingly, Defendant's motion for dismissal due to forum non conveniens is denied.

### D.  Stay of Proceedings

Next, Defendant argues that this case should be stayed pending the resolution of the Canadian proceedings.  However, the Court finds that staying the proceedings is not warranted.  As such, the Court denies Defendant's motion to stay this case.

### III.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Defendant's Motion to Dismiss Complaint Based on International Comity and Forum Non Conveniens, or Alternatively, Motion to Stay (Doc. No. 3) is **DENIED**.

(2) Defendant's Motion for Determination of Foreign Law (Doc. No. 13) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 17th day of May, 2011.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record